UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
JACKSONVILLE, FLORIDA

4/3/25

UNITED STATES OF AMERICA

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

v.

Case No. 3:24-cr-192-TJC-LLL

EDUARDO ANIBAL ESCOBAR

_____

**UNITED STATES' NOTICE OF MAXIMUM PENALTIES,
ELEMENTS OF OFFENSE, PERSONALIZATION OF ELEMENTS,
AND FACTUAL BASIS**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, stating as follows:

A.    MAXIMUM PENALTIES

The defendant has expressed a desire to enter pleas of guilty to the offenses charged in the Indictment. Count One charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The maximum penalties for Count One are a term of imprisonment of not more than twenty years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more

than two years of additional imprisonment as well as the possibility of an additional term of supervised release.

Count Two charges the defendant with conspiracy to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371. The maximum penalties for Count Two are a term of imprisonment of not more than five years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment as well as the possibility of an additional term of supervised release.

Cumulatively, if the defendant is sentenced consecutively on both counts, the total maximum penalties are a term of imprisonment of not more than 25 years, a fine of not more than $500,000 or twice the gross gain or twice the gross loss arising from the offenses, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and special assessments of $200, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than four years of additional imprisonment as well as the possibility of an additional term of supervised release. In addition, the defendant is subject to an

2

order of restitution.  Conviction of the offenses will also adversely affect the defendant's immigration status in the United States, both now and in the future, and likely will result in the defendant's removal from the United States.

In addition, the defendant must forfeit property, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as outlined in the Indictment.  Among the items that will be forfeited are the following:

(1)    an order of forfeiture for at least $8,764,652, which represents the proceeds the defendants jointly obtained as a result of the conspiracy and scheme to defraud alleged in Count One;

(2)    Real property, including all improvements thereon and appurtenances thereto, located at 130 Balsam Drive, Orlando, Florida 32807, the legal description for which is:

Lot 3, Block H, Azalea Park Section Three, according to the plat thereof as recorded in Plat Book S, Pages 118 and 119, Public Records of Orange County, Florida

Parcel Identification Number: 27-22-30-0384-08-030

Record Owners: Nelson A. Escobar and Eduardo A. Escobar Pineda; and

(3)    Real property, including all improvements thereon and appurtenances thereto, located at 1325 Park Manor Drive, Orlando, Florida 32815, the legal description for which is:

Lot 19, Block C, Park Manor Estates, Section 1, according to the plat thereof, recorded in Plat Book X, Page 79, Public Records of Orange County Florida

Parcel Identification Number: 21-22-31-6686-03-190

Record Owners: Eduardo Escobar and Carlos Rodriguez.

3

B.    ELEMENTS OF THE OFFENSES

The elements of Count One are:

(1)    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Indictment; and

(2)    the defendant knew the unlawful purpose of the plan and willfully joined in it.

The elements of Count Two are:

(1)    two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to defraud the United States, as charged in the Indictment;

(2)    the defendant knew the unlawful purpose of the plan and willfully joined in it;

(3)    during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Indictment; and

(4)    the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

C.    PERSONALIZATION OF ELEMENTS

As to Count One:

1.    Do you admit that, in the Middle District of Florida, from in or about January 2015 through in or about August 2024, you and at least one other person agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Indictment?

4

2.      Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

As to Count Two:

1.      Do you admit that, in the Middle District of Florida, from in or about January 2015 through in or about August 2024, you and at least one other person agreed to try to accomplish a common and unlawful plan to defraud the United States for the purpose of impeding the Internal Revenue Service in the collection of federal payroll taxes, as charged in the Indictment?

2.      Do you admit that you knew the unlawful purpose of the plan and willfully joined in it?

3.      Do you admit that during the conspiracy, one of the conspirators knowingly engaged in at least one overt act described in the Indictment, including that in or about October 2019, a conspirator caused to be filed with the IRS, on behalf of T. Escobar Construction ("TEC"), a Form 941, Employer's Quarterly Federal Tax Return, which reported that TEC had two employees with total wages, tips, and other compensation of $23,200?

4.      Do you admit that the overt act was knowingly committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

5

D.     FACTUAL BASIS

1.     Purpose

The following facts are set forth to aid the Court in making an inquiry to satisfy it that there is a factual basis for the plea of guilty in accordance with Rule 11(b)(3), Fed. R. Crim. P.  The government reserves its right to provide all relevant information concerning the defendant and the offense committed to the Probation Office and the Court for sentencing purposes.

2.     Facts

Under Florida law, any company that engages in construction work must secure and maintain workers' compensation insurance for its employees. Failure to maintain workers' compensation insurance is a felony.  The cost of a workers' compensation insurance policy is determined, in part, by the total amount of the payroll of the company purchasing the insurance.  Accordingly, all other things being equal, the cost of a policy is less for a company with a smaller employee payroll than it is for a company with a larger employee payroll.

Proof of workers' compensation insurance is generally provided in the form of a Certificate of Liability Insurance, or COI, declaring that the employer has the insurance coverage.  The certificate states only that the employer has workers' compensation insurance and does not include the number of workers or the amount of payroll covered by the insurance policy.

Under the Internal Revenue Code, employers paying wages must deduct and withhold an income tax determined in accordance with the Code. In addition, the employer is responsible for withholding and paying Federal Insurance Contributions Act, or FICA, taxes, which are comprised of both Social Security taxes and Medicare taxes and are paid by both the employee and the employer.

T. Escobar Construction, LLC ("TEC"), was a corporation registered in Florida in November 2013. Records of the Florida Department of State reflect that Adelmy Tejada was a manager and registered agent of the corporation and that, for the period of March 2015 through February 2022, EDUARDO ANIBAL ESCOBAR was an owner and manager of the corporation.

C. Escobar Construction, LLC ("CEC"), was a corporation registered in Florida in January 2015. Records of the Florida Department of State reflect that Carlos Alberto Rodriguez was a manager and registered agent of the corporation, that, for the period of January 2015 through February 2017, ESCOBAR was a manager of the corporation and that, for the period of February 2018 through March 2020, Tejada was a manager of the corporation.

ESCOBAR, Rodriguez, and Tejada, over the period of approximately January 2015 through approximately August 2024, engaged in a scheme to defraud and to obtain money by means of false and fraudulent representations concerning workers' compensation insurance. The purposes of the scheme were to (1) facilitate the employment of workers who were not legally authorized to work in the United

7

States, (2) to avoid paying for adequate workers' compensation insurance, and (3) to avoid paying required payroll taxes.

To carry out the scheme, ESCOBAR, Rodriguez, and Tejada obtained workers' compensation insurance policies for TEC and CEC that covered a handful of employees and a minimal payroll. They then reached agreements with hundreds of construction subcontractors, mostly made up of undocumented aliens, to represent to construction contractors that the subcontractors were employed by TEC or CEC. The subcontractors provided the conspirators with the names of the contractors for which they wanted to perform work and the conspirators sent the contractors COIs and other documents—usually by electronic transmission in interstate commerce—falsely representing that the subcontractors worked for TEC or CEC and that they were covered by the companies' workers' compensation insurance. This false representation allowed the subcontractors to obtain contracts with, and perform work for, the construction contractors.

The contractors wrote payroll checks to TEC or CEC for work performed by the subcontractors and, after keeping 6% to 8% as a fee, the conspirators distributed the payroll to the workers. Over the course of the scheme, approximately $146,077,535 in payroll flowed through TEC and CEC, of which the conspirators jointly retained at least $8,764,652 as a fee. The conspirators distributed the payroll remaining after deduction of the fee to the workers, usually

8

through work crew leaders.  Most of the workers were undocumented aliens working illegally in the United States.

Although the workers' compensation insurers believed they were providing coverage for the limited payroll reflected in the workers' compensation insurance applications and reported by TEC and CEC, the conspirators' actions caused the insurance companies to unknowingly provide coverage for approximately $146,077,535 in payroll.  If the insurance companies had known the amount of payroll they were in fact covering, they would have charged additional annual premiums totaling at least approximately $12,992,908.  Specifically, Frank Winston Crum Insurance would have charged additional premiums totaling $720,922, Ohio Security Insurance Company would have charged additional premiums totaling $6,332,777, Accredited Surety and Casualty Company would have charged additional premiums totaling $1,781,514, and BusinessFirst Insurance Company would have charged additional premiums totaling $4,171,445.  Furthermore, Ohio Security Insurance Company suffered an additional loss of $150,685 that it paid out for a workers' compensation claim and BusinessFirst Insurance Company suffered an additional loss of $247,210 that it paid out for a workers' compensation claim.

During part of the period of the conspiracy, ESCOBAR and Rodriguez contracted for services from payroll companies, which included issuing payroll checks to employees, deducting from employees' wages their share of payroll taxes due, and making quarterly payments to the Internal Revenue Service that included

9

both the employees' share and the employer's share of the payroll taxes due.  The services also included the companies' paying a weekly premium for workers' compensation insurance that was based on the amount of payroll that TEC and CEC reported to the companies.  The conspirators falsely represented to the companies that they had only a few employees and a minimal payroll, resulting in the companies paying only minimal workers' compensation insurance premiums and making only minimal payroll tax payments to the IRS.  For example, in October 2019, a payroll company filed with the IRS, on behalf of TEC, a Form 941, Employer's Quarterly Federal Tax Return, for the quarter ending in September 2019, which reported that TEC had two employees with total compensation of $23,200. During that quarter, the total amount of the payroll checks issued by contractors to TEC was approximately $3,552,833.

The scheme to defraud facilitated the evasion of payroll taxes that were due and owing on the workers' wages.  Neither the conspirators nor the contractors nor the subcontractors reported to the IRS the payroll that flowed through TEC and CEC, and no one paid either the employees' portion or the employers' portion of payroll taxes due.  If the total payroll of approximately $146,077,535 had been properly reported to the IRS, the total payroll taxes due would have been approximately $36,957,616.

With proceeds of the wire fraud scheme, ESCOBAR purchased real property located at 130 Balsam Drive, Orlando, Florida 32807, and ESCOBAR and

Rodriguez purchased real property located at 1325 Park Manor Drive, Orlando, Florida 32815.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: _____

ARNOLD B. CORSMEIER
Assistant United States Attorney
Florida Bar No. 869139
300 N. Hogan Street, Suite 7-350
Jacksonville, FL 32202-4270
Telephone:  (904) 301-6300
Facsimile:  (904) 301-6310
Email:        chip.corsmeier@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April __3__, 2025, the foregoing was filed in open court and a copy was provided to the following:

M. Alan Ceballos, Esq.

_____

ARNOLD B. CORSMEIER
Assistant United States Attorney

11